### FREEDMAN v. SAFRAN.

(Supreme Court, Appellate Division, First Department. April 8, 1909.)

**1. LIS PENDENS (§ 22*)—STATUTORY PROVISIONS.**

The rule at common law and in equity that an alienee of real estate, pending a real action, takes subject to the judgment when rendered, is changed by statute now embodied in Code Civ. Proc. §§ 1670–1672, authorizing plaintiff in an action affecting the title to real property to file a notice of lis pendens, etc., and such notice gives constructive notice of the pendency of the action to a purchaser or incumbrancer becoming such subsequent to its filing.

[Ed. Note.—For other cases, see Lis Pendens, Dec. Dig. § 22.*]

**2. LIS PENDENS (§ 16*)—STATUTORY PROVISIONS.**

The notice of lis pendens authorized by Code Civ. Proc. §§ 1670–1672, authorizing plaintiff in an action affecting title to real property to file a notice of lis pendens, which notice shall be constructive notice to a purchaser or incumbrancer, etc., must contain the names of the parties, a statement of the object of the action, and a description indicating with sufficient certainty the property respecting which the action is brought.

[Ed. Note.—For other cases, see Lis Pendens, Dec. Dig. § 16.*]

**3. LIS PENDENS (§ 16*)—NOTICE—SUFFICIENCY.**

A notice of the pendency of an action to foreclose a real estate mortgage correctly stating the title of the action, giving the names of all defendants, including a second mortgagee, reciting that the action was commenced to foreclose the mortgage made to plaintiff by defendant mortgagor, correctly describing the mortgage with place and date of record, averring that the mortgaged premises were described in the mortgage, and correctly describing the premises, except that the point of beginning was stated to be on the southerly side of a designated street, whereas the property was actually situated on the northerly side thereof, was sufficient within Code Civ. Proc. §§ 1670–1672, authorizing notice of lis pend-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ens, and was sufficient to give notice of the pendency of the action to subsequent assignees of the second mortgage, and to a subsequent mortgagee.

[Ed. Note.—For other cases, see Lis Pendens, Dec. Dig. § 16.*]

4. LIS PENDENS (§ 13*)—NOTICE—SUFFICIENCY.

The rights of creditors obtaining a judgment after the commencement of an action to foreclose a real estate mortgage executed by the debtor are not affected by the insufficiency of the notice of lis pendens filed in the foreclosure action.

[Ed. Note.—For other cases, see Lis Pendens, Dec. Dig. § 13.*]

Submission of controversy on an agreed statement of facts by Asher Freedman and Moritz Safran. Judgment for plaintiff.

Argued before PATTERSON, P. J., and INGRAHAM, CLARKE, HOUGHTON, and SCOTT, JJ.

David B. Ogden, for plaintiff.

Harold Swain, for defendant.

SCOTT, J. This is a submission of a controversy upon an agreed state of facts.

The plaintiff has contracted to convey to the defendant certain property on the northerly side of Grand street, west of Wooster, subject to certain specified incumbrances; and the defendant has agreed to purchase it and to pay therefor the stipulated price. The defendant has refused to perform the contract on the ground that the plaintiff did not have a good marketable title to the premises for the reason that the title and the interest of the plaintiff therein was incumbered by certain mortgages and judgments not excepted in the contract. The necessary tenders were made on both sides, and the question submitted to the court is whether the plaintiff's title was good and marketable, so that the defendant was obliged to complete his contract and pay the purchase money, or whether it was not good and marketable, so that the defendant was entitled to recover back the $500, which he had deposited on the signing of the contract, and the cost of the examination. The question arises out of the following facts:

On the 1st of June, 1904, the Demarest Pattern Company owned the premises in question and mortgaged them to the Metropolitan Life Insurance Company to secure the sum of $50,000. This mortgage was a first lien upon the property. On the 29th day of July, 1904, the Demarest Pattern Company executed a second mortgage covering the same premises to one Lee H. Smith to secure the sum of $5,000. Smith on the same day assigned the said mortgage to one Hyman Horwitz. On the 27th of October, 1904, the Metropolitan Life Insurance Company commenced an action for the foreclosure of its mortgage. The original summons and complaint and a notice of the pendency of action were filed on that day in the office of the clerk of the county of New York. Hyman Horwitz, who was then the owner of the second mortgage on the property, was made a party to the suit, as was the Demarest Pattern Company, which was still the owner of the fee. They both were duly served in the action with a summons and complaint. The notice of pendency of action correctly states the title of the action, giving the names of all the defendants. It also gives notice

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that the action was commenced for the purpose of foreclosing the mortgage made to the plaintiff by the Demarest Pattern Company. It correctly described the mortgage and its place and date of record, and stated that it was indexed in section 2, block 475, on the land map of the city of New York, which was the proper section and block number. It stated that the mortgaged premises were described in the mortgage, to the record of which a correct reference was made; but it also contained a description of the property which was correct in all respects, except that the point of beginning in the description was stated to be on the southerly side of Grand street; whereas, the property was actually situated on the northerly side of Grand street. And it is this defect which is relied upon by the defendant as justifying his refusal to take the title tendered to him by the plaintiff.

The proper description is the description contained in the mortgage, which was as follows:

"All that certain lot, piece or parcel of land, with the buildings and improvements thereon, situate, lying and being in the borough of Manhattan, city, county and state of New York, bounded and described as follows: Beginning at a point on the northerly side of Grand street, distant seventy-five feet westerly from the corner formed by the intersection of the northerly side of Grand street with the westerly side of Wooster street; running thence northerly and parallel with Wooster street, one hundred feet; thence westerly and parallel with Grand street twenty-five feet; thence southerly and parallel with Wooster street and part of the distance through a party wall one hundred feet to Grand street; and thence easterly along Grand street twenty-five feet to the point or place of beginning."

The description contained in the notice of pendency of action corresponded with this in every particular, except that the point of beginning is stated as being on the southerly side of Grand street, instead of the northerly side. The notice was indexed against all the defendants in section 2, block 475, of the land map of the county of New York, which it is conceded was the proper section number and block number on the said land map of the lot described in the mortgage under foreclosure, to wit, the block bounded on the south by Grand street, on the east by Wooster street, on the west by West Broadway, and on the north by Broome street.

After the filing of this notice of pendency of action, and after the service of the summons upon Horwitz, who at the time of the commencement of the action was the assignee of the second mortgage for $5,000, which is one of the mortgages said to be now outstanding, Horwitz assigned the said mortgage to one Brill by assignment dated December 24, 1904, and on the 5th day of January, 1905, Brill assigned a half interest in the said mortgage to one Annie Levy. Neither Brill nor Levy were made parties to the suit. On the 1st day of January, 1905, and after the service of the summons upon them, the Demarest Pattern Company made a mortgage to the Colonial Trust Company, as trustee, to secure an issue of $60,000 of bonds, which mortgage was duly recorded. The defendant also claims that this mortgage was not cut off by the foreclosure suit in consequence of the defect already mentioned in the notice of pendency of action. The other defects complained of were certain judgments recovered against the Demarest Pattern Company after the filing of the lis pendens.

On this state of facts the parties have agreed to submit to this court the following question:

"Whether or not at the time of the tender by the plaintiff herein of the deed to the defendant herein of the premises described in this submission pursuant to the contract existing between the said plaintiff and defendant for the sale of said premises, which contract is also referred to in said submission, the plaintiff had a good and marketable title to said premises free and clear of the incumbrances mentioned and referred to in Exhibit B annexed to this submission"

—and have stipulated for the appropriate judgment to be entered for plaintiff or defendant as an answer to said question shall require. The incumbrances referred to as contained in Exhibit B are the abovementioned mortgages to Lee H. Smith and the Colonial Trust Company, and the several judgments against the Demarest Pattern Company entered after the filing of the notice of pendency of action on October 27, 1904.

The provision for giving notice of the pendency of an action affecting real estate by filing a lis pendens is wholly of statutory creation. Formerly, both at common law and in equity, in case of an alienation pending a real action, the alienee took subject to the judgment which might be rendered therein (Hailey v. Ano., 136 N. Y. 569–574, 32 N. E. 1068, 32 Am. St. Rep. 764), and it was not until 1823 that this rule was changed by statute and provision made for giving notice of the pendency of such an action by filing a lis pendens. The subject is now regulated by sections 1670–1672 of the Code of Civil Procedure, which provide as follows:

"Sec. 1670. In an action brought to recover a judgment affecting the title to * * * real property, if the complaint is verified, the plaintiff may, when he files his complaint or at any time afterwards before final judgment, file in the clerk's office of each county where the property is situated, a notice of the pendency of the action, stating the names of the parties and the object of the action, and containing a brief description of the property in that county affected thereby. * * *

"Sec. 1671. Where a notice of the pendency of an action may be filed, as prescribed in the last section, the pendency of the action is constructive notice, from the time of so filing the notice only, to a purchaser or incumbrancer of the property affected thereby, from or against a defendant with respect to whom the notice is directed to be indexed, as prescribed in the next section. A person whose conveyance or incumbrance is subsequently executed, or subsequently recorded, is bound by all proceedings taken in the action, after the filing of the notice, to the same extent as if he was a party to the action. * * *

"Sec. 1672. Each county clerk with whom such a notice is filed must immediately record it in a book kept in his office for that purpose, and index it to the name of each defendant, specified in a direction appended at the foot of the notice and subscribed by the attorney for the plaintiff."

The declared object of these sections is to give constructive notice of the pendency of the action to a purchaser or incumbrancer of the property, who becomes such subsequent to the filing of the notice, from or against a defendant in the action with respect to whom the notice is directed to be indexed. The primary purpose of the notice is to indicate the parties defendant so that an alienee from a defendant may upon proper inquiry ascertain whether or not a real action has been commenced against his alienor. Hence it is imperative that the notice

shall contain the names of the parties, and a statement of the object of the action, and the direction for indexing by the clerk is that it shall indicate the names of each defendant specified in a direction appended at the foot of the notice. The requirement as to description of the property affected is that the notice shall contain a "brief" description, which would be satisfied by something less precise and formal than that usually contained in deeds and mortgages, and will be satisfied by a description which indicates with sufficient certainty the property respecting which the action is brought.

So far as concerns the names of the defendants, the notice drawn in question upon this submission is unimpeachable, and there is no question as to the proper indexing. It was incumbent upon any person proposing to take a conveyance or incumbrance from any defendant to examine the index kept by the clerk. If he had done so he would have been apprised that an action had been begun against that defendant to foreclose a mortgage which was correctly described, as to the date, the names of the parties, and the record. Turning to the description of the property to be affected by the judgment, he would have found that, literally read, it contained an impossible description of a plot of land commencing on the southerly side of Grand street, an ancient and well-known public street, and then extended northerly so that for the width of the street it lay within and covered the bed of the street itself. Not only so, but the dimensions of the lot could not be made to fit one which began on the southerly side of Grand street and extended northerly. The boundaries of the lot began at the southerly side of Grand street and ran north 100 feet, a considerable part of which would be taken up by the width of Grand street. It then ran westerly and parallel with Grand street 25 feet, and thence southerly 100 feet, not to the southerly side of Grand street, but to Grand street. Such a description would indicate a lot of equal longitudinal dimensions in feet, but of very unequal dimensions in fact. That some mistake had been made in the description of the lot would be apparent to any one who examined the notice, but there was still enough to apprise him that an action had been commenced, that it affected land on Grand street, and who were the parties defendant in the action. It would also apprise him that the action was one to foreclose a specified mortgage, upon reference to which he could readily ascertain with accuracy the property to be affected.

The case is not different in principle from that presented in Brookman v. Kurzman, 94 N. Y. 272, wherein the starting point was described as being "on the westerly side of Second avenue distant 50 feet and 10 inches from the southeasterly corner of Second avenue and 111th street"; but the other parts of the description showed clearly that the corner meant was the southwesterly one. The Court of Appeals found no difficulty in construing the deed according to its intended, rather than to its literal, reading, and, so construing it, compelled an objecting purchaser to accept the title. A very different question would be presented if the description did not bear upon its face evidence of a mistake sufficient to put an inquirer upon his guard. If two lots had been mortgaged, and but one described, or if this description beginning at a point on the southerly side of Grand street had ex-

tended the lot southerly, the description would have been perfect upon its face, and would contain nothing to warn a searcher that the wrong lot had been .described, and he would be under no obligation to search further. It is this perfectly and manifest clerical error in this present case that saves the notice as a valid lis pendens.

The precise question here presented does not appear to have been judicially passed upon, but, considering the accurate details which the notice did give, and the perfectly manifest error in the description, which was of itself sufficient to put a purchaser upon further inquiry, we consider that the notice fell within the fair intention of the statute, and was sufficient to give subsequent assignees of the second mortgage and the mortgagee named in the $60,000 mortgage notice that an action for the foreclosure of the first mortgage had been commenced, and that any rights they might acquire would be subordinate to the judgment in such action. So far as subsequent judgment creditors were concerned, it made no difference whether the lis pendens was sufficient or not. If we deemed the question at all doubtful, we should hesitate to compel the purchaser to accept a title which might be made the subject of attack. We do not so consider it, however.

There must be judgment for the plaintiff in accordance with the terms of the submission. All concur.